DERGE and wife, Appellants, vs. CARTER and another, Respondents.

*March 13—April 12, 1946.*

For the appellants there was a brief by *Merle W. Hillis* and *Gold & McCann,* all of Milwaukee, and oral argument by *R. T. McCann.*

For the respondents there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* of counsel, all of Milwaukee, and oral argument by *Charles B. Quarles.*

ROSENBERRY, C. J. The plaintiff, Anne Derge, walked north on the easterly side of North Eighth street until she reached West Hadley street. When she came to West Hadley street, she saw a northbound trackless trolley bus, three-quarters of a block away. She looked to the north and did not see any southbound traffic. At the time she looked to the

south and saw the northbound bus, it was about one hundred fifty feet away. She did not see defendant's truck. She walked to the curb and waited to see if the bus would stop. When the bus stopped she started to cross North Eighth street on the southerly crosswalk and was struck by defendant's northbound truck. She had no recollection of what happened from the time she started to walk in front of the standing bus until she "came to" on the platform of the truck. One eyewitness testified that he "knew that the front part of the truck was not in contact with the lady." The truck had a cab, and the physical facts indicate that she walked or ran into the side of the truck, was thrown into the air and landed on the platform back of the cab. She sustained severe injuries but had no pain in the legs or back. She had a fracture of the left humerus with a tenderness on the lower left chest, especially in the back portion.

The truck which was proceeding north on North Eighth street at a speed of about twenty miles an hour, stopped almost instantly with the front of the truck in the middle of the intersection. The driver of the truck blew his horn as he was about to pass the bus. Through the rear-view mirror the driver saw Mrs. Derge fall onto the platform back of the winch, which is behind the cab. After the truck stopped the driver got out of his cab and went onto the platform of the truck in order to assist Mrs. Derge. The bus driver then drove the truck across the intersection onto the right-hand side of the street. Shortly thereafter the truck was moved to the westerly side of the street where Mrs. Derge was carried to a porch to await the arrival of an ambulance.

The special verdict with the answers of the jury was as follows:

Question No. 1. Was the driver of the truck negligent in failing to yield the right of way to the plaintiff, Anne Derge?

Answer: (By the Court.)   Yes.

Question No. 2.   Was the fact that the truck driver failed to yield the right of way to the plaintiff Anne Derge an efficient cause of the collision?
Answer:   Yes.
Question No. 3.   Did the driver of the truck fail to keep a proper lookout as he approached the intersection where the collision in question occurred?
Answer:   Yes.
Question No. 4.   If you answer the third question "Yes," then was the driver's failure to keep a proper lookout an efficient cause of this collision?
Answer:   Yes.
Question No. 5.   Did the plaintiff Anne Derge fail to keep a proper lookout as she approached the point of the collision in question?
Answer:   Yes.
Question No. 6.   If you answer the fifth question "Yes," then was such failure to keep a proper lookout an efficient cause of this collision?
Answer:   Yes.
Question No. 7.   If by your answers to the previous questions you find that the truck driver and the plaintiff Anne Derge were negligent and that such negligence constituted an efficient cause of this collision, then what percentage of all the negligence which caused this collision do you attribute to the plaintiff Anne Derge?
Answer:   50%.
Question No. 8.   What sum will reasonably compensate the plaintiff Raymond J. Derge for the damages which he sustained by reason of his wife's injuries?
Answer: (By the Court, by consent) $870.
Question No. 9.   What sum will reasonably compensate the plaintiff Anne Derge for the damages which she sustained as a natural result of said collision?
Answer:   $4,000.

The principal error relied upon here is the instruction of the court in regard to question No. 7, relating to comparative negligence. The court instructed the jury with reference to that question as follows:

"In answering this question you will take into account that the total negligence which caused this collision was one hundred per cent and then you will apportion accordingly between the plaintiff Anne Derge and the truck driver that proportion of all the negligence which you find is attributable to each. In answering this question you will insert either in fraction or percentage the proportion of the negligence which you find is attributable to the plaintiff Anne Derge in your answer to this question."

The claim of the plaintiffs is that the court instructed the jury to take into consideration, in answering this question, only such negligence *as the jury found attributable to each;* that the court having answered question No. 1 as a matter of law, the court found the driver negligent, therefore the driver's negligence in failing to yield the right of way was withdrawn from the jury. An examination of the verdict discloses that while the court found the defendant negligent as a matter of law in failing to yield the right of way to the plaintiff, by question No. 2, he required the jury to find whether such failure was an efficient cause of the collision. Upon that question, the court instructed the jury as follows:

"As you have been told, the truck driver was negligent in not yielding the right of way to the plaintiff, Anne Derge. By the second question you are required to determine whether or not the driver's failure to yield the right of way was an efficient cause of the collision. If you find from the evidence that the truck driver's failure to yield the right of way was an efficient cause of the collision, you will then answer the second question 'Yes,' otherwise 'No.'"

The jury found that the failure of the driver of the truck to yield the right of way was a cause of the collision. They

had been instructed that this constituted negligence. They therefore found under the instruction of the court that the driver's negligence in failing to yield the right of way was a part of all the negligence which caused the collision.

It is considered that it is overcritical for the plaintiffs to argue on this appeal that by the instruction complained of the court withdrew from consideration of the jury in apportioning the negligence that part of the driver's negligence due to his failure to yield the right of way.

The defendants moved at the close of the evidence for a directed verdict, and contend here that the verdict should have been directed on the ground that as a matter of law the negligence of Mrs. Derge was greater than that of the driver. This question is preserved by a motion to review. We do not find it necessary to decide that question. The jury found that Mrs. Derge's negligence was fifty per cent of all the negligence which caused the collision. It appears without dispute that Mrs. Derge did not see the oncoming truck nor did the driver of the truck see Mrs. Derge or anyone standing in a position which would indicate they were about to cross the street. The truck driver was proceeding at a speed of twenty miles per hour and as he approached the standing bus blew his horn and continued northward. While the bus driver testified that he saw the body of Mrs. Derge in the air and that he knew "it was going over the cab," the physical facts are such as to demonstrate that the bus driver was mistaken as to the body of Mrs. Derge coming over the cab. The top of the cab is thirteen feet above the ground. In order to have been thrown into the air in such a way as to come over the top of the cab, Mrs. Derge must have been struck by the front of the truck. Ignoring the very great probability that she would have struck the cab instead of going over the top of it, the nature of her injuries indicate that she could not possibly have been struck by the front of the truck. The bus driver testified that he could not say whether she was running or walking. Whether

she was doing one or the other, the collision occurred when the cab of the truck was on or slightly north of the crosswalk. The fact that she sustained a broken humerus and complained of no pain in her back or legs are circumstances that leave no doubt that she struck the central or rear part of the truck. Otherwise she could not have fallen on the platform. The jury having found from this evidence that the negligence of Mrs. Derge was fifty per cent of all the negligence, its finding is certainly sustained by the evidence, and it is equally clear that the cause of the collision was more attributable to the negligence of Mrs. Derge than to the driver of the truck.

At the close of the testimony there was a motion for a directed verdict which was argued and denied. Thereupon plaintiffs' counsel requested the court to include two questions in the special verdict. One of these questions related to speed, the other to management and control. The allegations of the complaint are as follows:

That in traversing the intersection he did not have a clear view of approaching traffic on the crosswalks of the intersecting highway, and by virtue of such fact failed to operate said truck at a speed which would permit him to stop within one-half the distance in which he was able to see the plaintiff, Anne Derge, as was his duty under section 85.40 (4) of the Wisconsin statutes, and that he failed to keep the automobile he was driving under proper control.

It is considered that there was no prejudicial error in the refusal of the court to submit questions upon these subjects. It is clear from the evidence in this case that neither the speed of the truck nor any lack of control contributed to the collision. The major cause of this collision was the plaintiff, Anne Derge, coming in contact with the side of the truck. There is no evidence whatever of a lack of control on the part of the driver of the truck. He stopped his truck within a very short distance, he blew his horn as he was about to pass the bus. The evidence upon these points is not contradicted.

At the conclusion of the charge and after the jury retired, the record discloses the following:

"Mr. McCann: As to question No. 7, doesn't Your Honor instruct the jury as to the burden of proof?
"The Court: No, I don't charge them on that.
"Mr. McCann: I thought maybe you had inadvertently overlooked it.
"The Court: No."

The failure of the court to grant the request is assigned as error. It is considered that this colloquy did not amount to a request for an instruction. It is no more than an inquiry whether the court of its own motion instructs as to burden of proof with respect to apportionment of negligence.

Sec. 270.21 provides: ". . . Requests for instructions to the jury must be submitted in writing before the argument to the jury is begun, unless in the opinion of the trial judge, special circumstances excuse failure to so submit such requests."

If what transpired amounted to a request for an instruction, it came too late.

*By the Court.*—Judgment affirmed.

RECTOR, J., took no part.