SCHLEWITZ, Appellant, vs. LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA and another, Respondents.

*June 9—July 12, 1949.*

*Frank L. Morrow* of Eau Claire, for the appellant.

For the respondents there was a brief by *Farr & Brown* of Eau Claire, and oral argument by *Donald L. Farr*.

MARTIN, J. The jury found both plaintiff and defendant guilty of negligence as to maintaining a proper lookout, and also found that plaintiff failed to yield the right of way to the motorist. The negligence was apportioned forty per cent to plaintiff, and sixty per cent to defendant. The court changed the answer to make the plaintiff guilty of at least fifty per cent of the negligence.

It is plaintiff's contention that there was no basis for changing the answer referred to above for the reason that

there was no credible evidence upon which the jury could base its finding that plaintiff failed to keep a proper lookout or that he failed to yield the right of way to the motorist.

It is undisputed that the only eyewitness to the accident was Fred Sidler. He was standing on the northeast corner of the intersection near the scene of the accident and was watching the plaintiff cross the street. He testified that plaintiff had had some drinks and was staggering a little, and that he cautioned him before he stepped off the curb. Plaintiff entered the street about three feet east of the crosswalk and in front of the parked car, walked about fourteen feet from the curb, and Krienke's car came and brushed him. He came in contact with the car close to the rear of the front fender as he was walking south. Sidler testified further that at the time plaintiff was hit he was about a foot east of the crosswalk.

The only other witness who testified as to the point of impact was Officer Arvin Ziehlsdorf who said that the accident occurred about two feet east of the crosswalk.

Appellant stresses the fact that Kensmoe, who was riding with Krienke, testified to the effect that he observed the pedestrian walking from north to south on Madison street and just before the impact the pedestrian turned to go north. It is contended that the pedestrian turned back upon seeing the car, and made a fruitless effort to yield the right of way to the motorist.

Plaintiff is totally lacking in memory as to the events leading up to the accident.

The law provides that every pedestrian crossing a highway at any point other than a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway. Sec. 85.44 (4), Stats. Further, it was the duty of the plaintiff to exercise ordinary care with respect to the keeping of a careful and effective lookout as he entered and proceeded in crossing Madison street, to enable him to become timely aware of the presence and location of oncoming traffic.

It hardly seems necessary to reiterate the rule that the credibility of witnesses is solely within the jury's province and the verdict should not be disturbed if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's findings. See *Webster v. Krembs* (1939), 230 Wis. 252, 282 N. W. 564.

The testimony of Sidler, the only eyewitness to the accident, and Officer Ziehlsdorf supports the jury's findings.

In *Post v. Thomas* (1942), 240 Wis. 519, 3 N. W. (2d) 344, a pedestrian crossed a busy city street at night at other than the crosswalk and was struck by a car in the center of the street. The pedestrian was held to be at least fifty per cent causally negligent as a matter of law. See also *Derge v. Carter* (1946), 248 Wis. 500, 22 N. W. (2d) 505, wherein a pedestrian was held to be at least fifty per cent causally negligent.

Upon the evidence we are of the view that the trial court properly changed the jury's answer on the apportionment of negligence and determined that the negligence of the plaintiff was as great as that of the defendant.

Plaintiff asserts that the trial court failed to include in the special verdict a question as to management and control by the defendant, Krienke, in the operation of his automobile.

Plaintiff is not in a position now to make a complaint about the form of the verdict for his counsel made no request that such a question be submitted and made no objection to the form of the verdict.

It was stated in *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 364, 34 N. W. (2d) 116:

"Counsel for the parties have a distinct obligation to aid in the preparation of special verdicts and to voice objection to the form of questions, if such questions are objectionable, when it will afford an opportunity to the trial court to correct them. Counsel may not accept the language of the trial court as used in the special verdict without objection, wait and

see whether the answers of the jury are satisfactory and, if not, then for the first time complain about the phraseology upon appeal."

The final question relates to damages. Plaintiff claims that $5,000 for a skull fracture resulting in total disability to a fifty-eight-year-old man for a period of two years following the accident and whose condition is becoming progressively worse, indicates that the jury's verdict was perverse and influenced by passion and prejudice.

The only evidence offered as to plaintiff's income was that prior to the accident he had worked as a laborer for a coal company from December 27, 1945, to February 22, 1946. After the accident he worked for the same company from November 18, 1946, through January 23, 1947. His income during that period averaged from $35 to $40 per week. There is other evidence indicating that plaintiff had done some carpenter work and painting. No proof was offered that he incurred any hospital or doctor bills. It does not appear that plaintiff sustained any amount of conscious pain or suffering.

Under the facts of this case, the jury was justified in assessing plaintiff's damages in the sum of $5,000.

*By the Court.*—Judgment affirmed.